[Nos. G025656, G025694. Fourth Dist., Div. Three. Jan. 18, 2002.]

ROBERT HART, Plaintiff and Appellant, v.
LINDA AVETOOM, Defendant and Respondent;
DAVID D. RIBEIRO et al., Objectors and Appellants.

**COUNSEL**

Law Offices of Silverstein & Huston and Mark W. Huston for Plaintiff and Appellant.

Ronald P. Kaplan for Objectors and Appellants.

Steven L. Stern for Defendant and Respondent.

## OPINION

**BEDSWORTH, J.**—Robert Hart and his former attorney, David D. Ribeiro, challenge an order awarding Robert's ex-wife, Linda Avetoom, sanctions under Code of Civil Procedure section 128.7.[1] Hart and Ribeiro raise a variety of contentions, but two are dispositive: sanctions were improper because the motion filed was different from the motion that was served, violating the "safe harbor" requirements of the sanctions statute, and the sanctions were impermissibly sought after the underlying lawsuit was dismissed. We therefore reverse.

Robert and Linda Hart were divorced sometime before the inception of this action, and she resumed the use of her maiden name (Avetoom). In April 1996, Hart, a physician, was ordered to make monthly child support payments for his three children. Five months later, after various attempts to collect overdue payments failed, Avetoom turned to the Orange County District Attorney's Office for assistance. (Former Welf. & Inst. Code, § 11475; see Fam. Code, § 17200 et seq.)

Hart retained Attorney Ribeiro to handle the issue of his support obligations. At a May 1997 support hearing, following a chambers conference with both attorneys, Avetoom endorsed over to the district attorney's office money orders Hart had mailed to her. All future child support payments were to be made directly to the district attorney's office.

But what seemed like an ending turned out to be only the beginning. In September 1997, Hart, aided by Ribeiro, sued Avetoom for abuse of process, and both intentional and negligent infliction of emotional distress, alleging she had falsely reported she was not receiving her child support payments. On December 3, 1997, Avetoom served a proposed motion for sanctions under section 128.7. A 30-day safe harbor period commenced, during which Hart was free to amend or dismiss his complaint without penalty. Hart did not respond to this motion.

Ribeiro withdrew as Hart's counsel of record in April 1998. Four months later, Avetoom filed a motion for summary judgment. Hart apparently saw the writing on the wall. Acting in propria persona—in the wake of a second attorney's departure—he voluntarily dismissed his suit without prejudice before the motion's scheduled hearing date in October. Avetoom filed her motion for section 128.7 sanctions more than a month later, on November 20, 1998. Included as exhibit A was the original motion, memorandum of points and authorities, and a supporting declaration, all served on December

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise noted.

3, 1997. The motion also included supplemental points and authorities, as well as additional declarations and a copy of the motion for summary judgment.

Hart and Ribeiro argued—somehow unsuccessfully—that the sanctions motion *filed* was different from the motion *served* in December 1997, noting it was based on new evidence and different legal theories. Because Avetoom had not served that motion 30 days before filing, there was no compliance with the safe harbor provision of the sanctions statute.

Nonetheless, the court granted the motion for sanctions, finding Hart's lawsuit was brought for an improper purpose, frivolous, and bereft of evidentiary support. Concluding the 30-day "safe harbor" period had expired, the court awarded $30,811 in sanctions against Hart and $6,000 against his former attorney, Ribeiro.

■  Hart contends the sanctions motion violated the safe harbor provision of section 128.7, subdivision (c)(1). The statute requires service of the motion on the offending party at least 30 days before filing. During the safe harbor period, the recipient may avoid sanctions by correcting its conduct and withdrawing the offending paper, claim or contention. Hart is correct.

■  Preliminarily, we note the sanctions statute, section 128.7, is "modeled, almost word for word, on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). In examining the provisions of section 128.7, California courts may look to federal decisions interpreting the federal rule." (*Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 467 [112 Cal.Rptr.2d 119]; see *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 132 [87 Cal.Rptr.2d 594].)

■  We turn first though, to *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10 [76 Cal.Rptr.2d 171] (*Cromwell*), an opinion issued by the appellate division of our own Orange County Superior Court. *Cromwell* held a defendant who filed his section 128.7 motion only 21 days after it was served on plaintiff's counsel violated the statute's safe harbor provision. The court went on to explain that even if the requisite 30-day period had elapsed, the request for sanctions was rendered moot by a ruling sustaining a demurrer without leave to amend. (*Cromwell*, at p. Supp. 13.) The court noted "the central purpose of the 'safe harbor' provision is to provide an adequate opportunity for withdrawal (i.e., voluntary dismissal) without penalty once the impropriety of the pleading and the consequence of nonwithdrawal have been made clear." (*Id.* at pp. Supp. 14-15.)

The defendant argued letters to counsel giving advance notice of the sanctions motion were evidence that the moving party was in "substantial compliance" with the essential elements of the sanctions statute. In its discussion of the doctrine of "substantial compliance," the court reviewed federal authority construing rule 11 of the Federal Rule of Civil Procedure, noting the safe harbor provision has been strictly construed: " 'To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the [revised rule] provides that the "safe harbor" period begins to run only upon service of the motion.' [Citation.] By specifically requiring service of the 'motion' and 'notice of motion,' *the Legislature made clear that the papers to be served on the opposing party are the same papers which are to be filed with the court no less than 30 days later.*" (*Cromwell, supra,* 65 Cal.App.4th at p. Supp. 15, italics added.)

This, in our view, is where this train went off the tracks. The record confirms the motion filed in November 1998 was not the same motion served in December 1997. The November 1998 version contained additional declarations and supplemental points and authorities not present in the original version. In fact, a copy of December 1997 motion was attached as an "exhibit" to the revised version. This, in and of itself, should have been enough to put all concerned on notice that something was wrong. True, the two motions were similar, but the problem is they were not the same. "Close" is good enough in horseshoes and hand grenades, but not in the context of the sanctions statute.

Avetoom's "new and improved" sanctions motion was both served *and* filed on November 20, 1998. The December 17 hearing date left no "safe harbor" during which Hart was free to modify or withdraw his complaint. To make matters worse, Hart had, by that time, already voluntarily dismissed his lawsuit, and there was no further action he could take to avoid an award of sanctions.

On this point, the case law is quite clear—allowing a party to serve and file a sanctions motion after the conclusion of the case would completely defeat the purpose of the safe harbor provision. We are reminded the "purpose of section 128.7 is to deter frivolous filings, not to punish parties. [Citation.] This purpose is forwarded by allowing the offending party to avoid sanctions altogether by appropriately correcting the sanctionable conduct after being alerted to the violation." (*Barnes v. Department of Corrections, supra,* 74 Cal.App.4th at p. 133; *Cromwell, supra,* 65 Cal.App.4th at p. Supp. 14 ["sanctions under section 128.7 are not designed to be punitive in nature but rather to promote compliance with the statutory standards of conduct."]; *Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 443 [82

Cal.Rptr.2d 712] ["[w]e can discern no situation in which sanctions following a voluntary dismissal or settlement would not be precluded by both the safe harbor provisions and the voluntary dismissal/settlement provisions [of section 128.7]"]; see *Goodstone v. Southwest Airlines Co.* (1998) 63 Cal.App.4th 406 [73 Cal.Rptr.2d 655] [party cannot wait until the conclusion of the case to file motions for sanctions].) It is difficult to imagine a more "appropriate correction" than voluntary dismissal.

The federal courts have followed the same course. Interpreting Federal Rules of Civil Procedure, rule 11, a panel of the Sixth Circuit Court of Appeals held the "service and filing [of the motion] must occur prior to final judgment or judicial rejection of the offending contention. Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11." (*Ridder v. City of Springfield* (6th Cir. 1997) 109 F.3d 288, 297.) Along the same lines, we note "a party may not bring a motion for sanctions unless there is some action the offending party may take to withdraw the improper pleading." (*Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 441.)

In sum, Avetoom's failure to file her sanctions motion before Hart dismissed the case is dispositive of this appeal. So is the fact the sanctions motion filed was different from the one served.[2] In this particular context, at least, the court was without authority to act, and the order imposing sanctions was an abuse of discretion.

The order imposing sanctions against Hart and Attorney Ribeiro is reversed. The parties shall bear their own costs on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

On February 14, 2002, the opinion was modified to read as printed above.

---

[2]We note Avetoom's appellate counsel did not join the fray until Hart filed his notice of appeal, and played no part in the proceedings below.