[No. H031524. Sixth Dist. July 8, 2008.]

In re the Marriage of RICHARD S. FALCONE and KATHEY FYKE.
RICHARD S. FALCONE, Respondent, v.
KATHEY FYKE, Appellant.

**COUNSEL**

Kathey Fyke, in pro. per., for Appellant.

Law Offices of Bernard N. Wolf, Bernard N. Wolf; Law Offices of Yates-Carter and Lynne Yates-Carter for Respondent.

**OPINION**

**PREMO, J.**—This is one in a series of 10 appeals or writ petitions filed in this court by Kathey Fyke, the respondent in a dissolution matter initiated by her former husband Richard S. Falcone in 2003. In this appeal Kathey[1] challenges orders dismissing her contempt motion against Richard. She also challenges orders imposing a total of $64,500 in sanctions against her for prosecuting the contempt motion without any factual or legal basis and for pursuit of a meritless motion for new trial. We conclude that Kathey has failed to affirmatively demonstrate any error warranting reversal. Accordingly, we shall affirm.

## I. *Factual and Procedural Background*

### A. *Kathey's Contempt Motion*

The challenged orders all flow from Kathey's motion charging Richard with contempt for failing to pay the full amount of child and spousal support mandated by a temporary child and spousal support order entered the year before. The temporary support order provided that Richard was to make monthly payments of base child and spousal support and "[a]ny additional income of [Richard's] over and above $17,000 monthly will be paid to [Kathey] pursuant to a Smith Ostler calculation." (See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 37 [272 Cal.Rptr. 560] [affirming

---

[1] "As is customary in family law cases, we will refer to the parties by their given names for purposes of clarity and not out of disrespect." (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1549, fn. 1 [44 Cal.Rptr.3d 52].)

order for "additional support, based on a percentage of [husband's] future bonuses"].) Richard paid the base support, although he paid the full amount in one payment per month rather than half on the first and half on the 15th as specified by the order. Richard had not made any *Smith-Ostler* payments nor had Kathey ever asked the court to make a determination of arrearages.

The contempt motion was filed on Kathey's behalf by Counsel Paul Nesse on April 6, 2006. In it Kathey alleged that Richard's failure to make the base payments twice per month meant that Richard owed Kathey $153.50 in interest and that his failure to make the *Smith-Ostler* payments resulted in arrearages of more than $83,000. The motion listed the alleged defaults as 54 counts of contempt.

Richard's attorneys repeatedly asked Nesse to amend or dismiss the contempt motion, explaining that Richard could not be in contempt of the order for base payments since he had made those payments in full every month and that the *Smith-Ostler* part of the order was not specific enough to be enforced by contempt. Nesse refused to correct the motion. Richard's attorneys prepared motions in limine that they intended to present at trial of the contempt matter and personally served Nesse with copies of these motions on October 2, 2006. The in limine motions sought dismissal of the contempt counts pertaining to the base support orders since, as shown on the face of the motion, Richard had made those payments. The in limine motions also sought dismissal of the counts pertaining to the *Smith-Ostler* payments because the temporary support order did not specify how the calculation was to be applied or when the payments were to be made and, therefore, could not form the basis for a finding of contempt.

On November 7, 2006, after Kathey still refused to modify or withdraw the contempt motion, Richard served both Nesse and Kathey with copies of a proposed motion under Code of Civil Procedure section 128.7 (hereafter, section 128.7). The proposed motion sought sanctions for the pending contempt matter on the ground that the contempt motion had no legal or factual basis and had been filed solely to cause unnecessary delay and to increase the cost of the litigation. As required by section 128.7, the notice was not filed with the court but merely gave Kathey and her attorney notice of Richard's intent to seek sanctions if they did not withdraw or modify the contempt motion as they had repeatedly been requested to do.

On the same day Richard served his proposed section 128.7 motion, Nesse moved to withdraw from his representation of Kathey on the ground that Kathey had failed to pay his fees or replenish his retainer and because "[d]ifferences have arisen between Ms. Fyke and counsel as to the conduct of the case." The trial court granted Nesse's motion just days before the hearing on the contempt motion.

### B. *The Hearing on the Contempt Motion (November 28, 2006)*

At the outset of the hearing on November 28, 2006, Kathey asked for a continuance, claiming she needed time to find a new attorney. Having examined the papers on file, the trial court noted that the contempt motion "looks like you prepared it and directed your attorney to file it." The court further explained, "[I]t's my belief that you are aware—at least some time back in October—that there might be a likelihood that Mr. Ness[e] was not going to be your attorney here today. You appear to have been filing quite a few things on your own, even predating that point in time, such that I think your involvement and knowledge about this matter is very great. [¶] Also, you were aware that this was the date for the hearing. You are making requests on the day of the hearing that need to be brought notice-wise quite some time before, and I believe you had sufficient time to do that." Accordingly, the trial court denied Kathey's request for a continuance.

Kathey responded, "So in addition to asking for that continuance on the record, I would like to make a—it's a [Family Code section 2031, subdivision] (b) oral motion for attorney fees in the amount of $25,000. There is a recent I and E [income and expense declaration] on file for both parties, and with the $25,000 then I think it will expedite my getting an attorney." The court replied, "Well, your motion is denied, not only as to continuance but also for the attorney's fee request." The court explained that the motion was not timely: "Well, you are asking me in effect for attorney's—to continue this proceeding, give you attorney fees to hire someone to represent you at that continued date, and I'm saying that I'm not going to continue the proceeding. We are going to go forward today."

The trial court then granted Richard's in limine motions and dismissed the contempt motion with prejudice. Addressing Kathey, the court emphasized that although dismissal with prejudice meant she could not file another contempt motion, it "does not impair your ability with the proper motion to establish whatever obligation may exist and whatever appropriate period of time the statute would permit, and your pursuing collection."

At the close of the hearing, Richard's attorneys began discussing a date for a hearing on a motion for fees and sanctions against Kathey. The trial court set January 12, 2007, as the date for hearing the anticipated motion. Kathey again asked the court for an attorney's fees order so that she could hire counsel to defend herself against those motions. The court denied that request noting that as there was no actual motion pending, all the court was doing was setting a date for a hearing.

### C. *Richard's First Two Motions for Sanctions*

On December 11, 2006, Richard served Kathey with a section 128.7 motion and filed it the following day. The motion was a revised version of the motion served on Kathey November 7, 2006. It contained an updated declaration of counsel describing the outcome of the contempt proceedings and attached the original motion that had been served on November 7, 2006, as exhibit No. 1. The motion was set to be heard, as the court had previously ordered, on January 12, 2007.

On January 2, 2007, Richard made a successful ex parte request for an order shortening time for notice of a motion under Family Code section 271, which, like the section 128.7 motion, sought sanctions for Kathey's prosecution of the contempt motion. Richard wanted the Family Code motion to be heard along with the section 128.7 motion set for January 12, 2007. The dual sanctions motions sought fees for Richard's two attorneys, Tracy Duell-Cazes, the attorney who represented Richard in the contempt proceedings, and Lynne Yates-Carter, Richard's family law attorney.

Counsel's declaration in support of the merits of the Family Code section 271 motion cited instances of Kathey's uncooperative behavior. Counsel stated that prior to the hearing on the contempt motion, at the mandatory settlement conference on November 22, 2006, Kathey was personally alerted to the defects in her contempt motion. Kathey refused to drop the motion unless Richard signed over the couple's Sunnyvale residence to her. According to counsel, the property had been recently appraised at $685,000 and had a loan against it of approximately $99,000. Richard declined the demand but offered to continue the hearing on the contempt motion. Kathey insisted upon going forward with the contempt proceedings, maintaining that she wanted to "get her money." After counsel and the court explained that contempt would only punish Richard and would not get Kathey her money, Kathey still insisted on proceeding to the hearing. As noted, she changed positions on the day of the hearing, asking for the continuance she had rejected just days before.

Counsel also provided the court with information pertaining to Kathey's ability to pay the sanctions. In addition to the Sunnyvale property, the parties owned approximately two level acres with a partially completed home in the town of Saratoga. The property had been appraised at between $2.8 and $3.2 million and had recently been ordered sold. The property had a loan against it of about $435,000, leaving the parties with equity of more than $2 million.

### D. *The Hearing on the First Two Sanctions Motions (January 12, 2007)*

At the January 12, 2007 hearing, Richard's counsel objected to the timeliness of Kathey's response to the section 128.7 motion, which she had served by mail on January 5, 2007. The trial court agreed that the response was not timely and refused to consider it. The court granted Richard's section 128.7 motion, awarding "attorney's fees and costs payable to Ms. Duell-Cazes pursuant to the [section] 128.7 motion in the amount of $15,000." The court also granted the Family Code motion stating, "The court awards counsel for [Richard] the sum of $17,500 . . . ." Both awards were made payable in 60 days and were secured by a lien on the Saratoga property.

### E. *Kathey's New Trial Motions*

On February 27, 2007, Kathey filed a notice of intent to move for a new trial of the contempt matter. (Code Civ. Proc., § 659.) She argued that a new trial was warranted due to irregularity of the proceedings (*id.*, § 657, subd. 1), which, she claimed, was the trial court's denial of her requests for a continuance and for attorney's fees. On March 28, 2007, she filed another notice of intent to move for new trial, this one challenging the sanctions orders issued on January 12, 2007. Both motions were combined for hearing on April 6, 2007.

### F. *Richard's Third Sanctions Motion*

Richard sought sanctions under Family Code section 271 for Kathey's new trial motions. Counsel's declaration explained that Kathey had persistently engaged in delaying and obstructive conduct, filing objections or motions for new trial following every unfavorable ruling she received. She filed objections to the court's orders *after* the orders were signed by the judge and filed in the court. She filed objections to an order appointing a referee and opposed Richard's motion to compel the sale of the Saratoga property. After being sanctioned for her failure to respond to Richard's discovery requests she filed a 12-page document objecting to the sanctions order and an 18-page motion for new trial. She filed a "notice of unavailability" for February 13 through February 25, 2007, delaying entry of orders unfavorable to her and attempting, according to counsel, to delay resolution of the issue of selling the Saratoga property. The instant new trial motion, counsel argued, had no basis in law or fact and was merely an attempt to get a "second bite at the apple" after the trial court had made it clear that further litigation of the issue was unwarranted. Counsel argued that significant sanctions were warranted in order to deter Kathey from continuing to file meritless "objections" to every

issue. "She is costing my client tens of thousands of dollars in defending against her objections to every order, motions, requests for new trials and other pleadings."

### G. *The Combined Hearing on Kathey's New Trial Motions and Richard's Third Motion for Sanctions (April 6, 2007)*

At the hearing on April 6, 2007, the trial court denied Kathey's first new trial motion. Kathey withdrew the second motion. The court granted Richard's motion for sanctions under Family Code section 271, awarding counsel $12,000 in attorney's fees and $20,000 in additional sanctions.

## II. *Appellant's Contentions and Principles of Appellate Review*

Kathey appeals from the trial court's order dismissing the contempt motion. She argues that the trial court abused its discretion in denying her request for a continuance of the hearing and denying her oral motion for attorney's fees to assist her in prosecuting that matter. Kathey does not challenge the substantive basis for dismissal of the contempt motion. Kathey also appeals from the sanctions orders, citing a variety of procedural irregularities she claims warrant reversal and arguing that the sanctions impose an unreasonable burden upon her.

Preliminarily, we stress that, to be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court. " ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." [Citations.]' (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].)" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898 [117 Cal.Rptr.2d 520].)

Furthermore, error alone does not warrant reversal. "It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result." (*In re Sophia B.* (1988) 203 Cal.App.3d 1436, 1439 [250 Cal.Rptr. 802].) " 'The burden is on the appellant, not alone to show error, but to show injury from the error.' " (*Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 740 [2 Cal.Rptr.2d 594].) "Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record." (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [98 Cal.Rptr.2d 136].) "Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal." (*Osborn v. Mission Ready*

*Mix* (1990) 224 Cal.App.3d 104, 114 [273 Cal.Rptr. 457].) A miscarriage of justice is not found "unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result." (*Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1841 [16 Cal.Rptr.2d 385].) With these principles in mind, we proceed to the arguments Kathey raises on appeal.

## III. *Discussion*

### A. *Denial of Kathey's Request for Continuance of Contempt Hearing*

Kathey argues that the trial court abused its discretion in refusing her request for a continuance of the contempt motion. We detect no error.

Continuances are granted only on an affirmative showing of good cause requiring a continuance. (Cal. Rules of Court, rule 3.1332; *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169 [208 Cal.Rptr. 345].) Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing. (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170 [272 Cal.Rptr. 602].) In the present case, the contempt motion had been pending for over seven months. The trial court found that Kathey had known for over a month that she might not have an attorney at the hearing but had waited until the day of the hearing to request the continuance, which was unfair to the other side. Further, the trial court found that Kathey had been closely involved in drafting her moving papers, implying that Kathey had already exercised significant direct control over the litigation and that the request was a delaying tactic. Indeed, Kathey had filed three other contempt motions without the assistance of counsel. In short, Kathey did not show good cause for the continuance so that the trial court acted within its discretion in denying her request.

### B. *Denial of Kathey's Attorney's Fees Motion*

Kathey also argues that the trial court erred in denying her oral motions for attorney's fees to allow her to hire counsel to represent her in connection with the contempt motion and the anticipated sanctions motion. Kathey made the motions pursuant to Family Code section 2031, subdivision (b)(1), which allows that such a motion may be made orally, without notice, "[a]t the time of the hearing of the cause on the merits."[2] Kathey claims that the trial court

---

[2] Family Code section 2031 provides, in pertinent part: "(a)(1) Except as provided in subdivision (b), during the pendency of a proceeding for dissolution of marriage, for nullity of marriage, for legal separation of the parties, or any proceeding subsequent to entry of a related judgment, an application for a temporary order making, augmenting, or modifying an award of

erred in denying the motion because the court failed to take into consideration her need for the funds. Richard argues that the two denials are not appealable orders, that Kathey's oral motion was not made "[a]t the time of the hearing of the cause on the merits," and that, in any event, Kathey failed to demonstrate that the trial court's ruling was an abuse of discretion. Assuming that the orders are appealable, we detect no error on this record.

■ As Kathey repeatedly insists, her motions were for "need-based" attorney's fees. Since the trial court refused her request for a continuance, Kathey did not need the funds to hire an attorney to represent her at the hearing. And, since no motion for sanctions had actually been filed, Kathey did not have an immediate need to hire counsel for those proceedings. Furthermore, Family Code section 2032 requires the trial court to make its attorney's fees orders based, among other things, upon the relative financial needs of the parties. (Fam. Code, § 2032, subds. (a), (b).) In order to make an award of attorney's fees under Family Code section 2032 the trial court must have some evidence that the moving party needs the money. "The burden of establishing such necessity is upon the applicant." (*Straub v. Straub* (1963) 213 Cal.App.2d 792, 799 [29 Cal.Rptr. 183].) ■ Here, although there is some evidence pertaining to Richard's income, there is no evidence in the portion of the record that was before the trial court at the time Kathey made the motions that shows the parties' relative financial positions. Indeed, on the record we have, had the court chosen to make the orders Kathey sought, they would have been subject to reversal for insufficiency of the evidence. Thus, Kathey has failed to affirmatively demonstrate that the trial court abused its discretion in refusing to order the attorney's fees she requested.

## C. *The January 2007 Sanctions Orders*

### 1. *Striking Kathey's Opposition Papers*

Kathey argues that the trial court erred in striking her papers opposing the section 128.7 motion. She suggests that the court should have overlooked the untimely filing since she had served a notice of unavailability on December 15, 2006, in which she stated that she would be unavailable beginning Monday, December 18, 2006, and continuing through January 4, 2007. Kathey offers no authority to support the assertion implicit in her argument, which is that the filing requirements of the Code of Civil Procedure are

attorney's fees, including a reasonable retainer to hire an attorney, or costs or both shall be made by motion on notice or by an order to show cause. [¶] (2) The court shall rule on an application within 15 days of the hearing on the motion or order to show cause. [¶] (b) An order described in subdivision (a) may be made without notice by an oral motion in open court at either of the following times: [¶] (1) At the time of the hearing of the cause on the merits. . . ."

modified when a party decides to take a vacation. Indeed, as one appellate court has recently declared, that is not the law. "To the extent this practice [of filing a notice of unavailability] attempts to put control of the court's calendar in the hands of counsel—as opposed to the judiciary—it is an impermissible infringement of the court's inherent powers." (*Carl v. Superior Court* (2007) 157 Cal.App.4th 73, 75 [68 Cal.Rptr.3d 566].)

### 2. *The Order Shortening Time for Hearing*

Kathey maintains that the trial court erred in granting Richard's ex parte request for an order shortening time for the hearing on his Family Code section 271 motion, again citing her "notice of unavailability" and arguing that counsel failed to inform the trial court that Kathey was not scheduled to be available until January 5. Kathey fails to describe how she was prejudiced by the alleged impropriety. This second sanctions motion was based upon the same facts as the section 128.7 motion, which had been scheduled since November 28, 2006. And, in spite of the shortened time, Kathey managed to file a 23-page memorandum of points and authorities and a four-page declaration in opposition within the time allowed by the court. If there was any error, it did not deprive Kathey of an opportunity to be heard and does not warrant reversal.

### 3. *Verification of the Sanctions Motions*

Kathey argues that the court erred in considering any of Richard's sanctions motions because they were not verified by Richard but by his attorneys. The argument is meritless as Kathey fails to show prejudice from the alleged irregularity. Indeed, the purpose of any verification requirement is to assure the good faith of the allegations contained in the paper. (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 822, fn. 4 [108 Cal.Rptr.2d 870].) When an attorney has verified the paper, even without stating the reason it was not verified by the party, the court may permit the paper to stand. (*Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1498 [250 Cal.Rptr. 819].) The absence of any complaint concerning the verifying party's good faith renders meritless any contention pertaining to the verification. (*Ibid.*) Kathey does not argue that counsel's allegations lacked good faith. The trial court did not err in overlooking the alleged defect.

### 4. *Timeliness of the Code of Civil Procedure section 128.7 Motion*

Kathey claims that Richard's section 128.7 motion was not served in time to give Kathey the prescribed safe-harbor period within which to correct the contempt motion and avoid the sanction. We do not reach this issue.

■ The purpose of section 128.7 is to deter frivolous filings. That purpose is advanced by allowing the offending party to withdraw or amend a sanctionable paper after being alerted to the violation. (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414 [115 Cal.Rptr.2d 511].) Thus, section 128.7 requires that a party or attorney for a party be given 21 days after notice to correct an allegedly frivolous paper. This is accomplished by serving the motion but deferring filing and final adjudication of the offending pleading for at least 21 days. (§ 128.7, subd. (c)(1); *Hart v. Avetoom, supra,* at p. 414.) Here, Kathey was served exactly 21 days prior to the hearing on the contempt motion. According to Kathey, however, since notice was served by mail, the time for her to amend or withdraw the motion should have been extended by five days pursuant to Code of Civil Procedure section 1013.[3]

■ Kathey did not attempt to raise this issue below. Her opposing papers, which had been stricken by the trial court, did not mention the five-day extension nor did she mention the issue orally at the hearing. These omissions are an implied waiver of the objection. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [64 Cal.Rptr.2d 383].) Richard's brief did not raise the waiver argument. Pursuant to Government Code section 68081 we requested and received supplemental briefing on the issue. As Richard now points out, an appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below. (*In re Marriage of Nelson, supra,* 139 Cal.App.4th 1546, 1558.) The policy behind the rule is fairness. "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840]; see also *In re Marriage of Harris* (2007) 158 Cal.App.4th 430, 440 [70 Cal.Rptr.3d 51] (dis. opn. of Ramirez, P. J.).) Kathey had ample opportunity to raise the objection below. Her failure to do so deprived Richard of the chance to argue the issue or cure the alleged error and prevented the trial court from making any ruling on the point. Accordingly, we decline to consider the issue now.[4]

---

[3] The proof of service shows that the original notice of motion was served on Kathey by mail on November 7, 2006. Counsel's declaration in support of the Family Code section 271 motion states, however, that "[o]n November 7, 2006, again in my presence, Ms. Duell-Cazes served Mr. Nesse and his client with the proposed CCP [Code of Civil Procedure section] 128.7 motion." The statement suggests that Kathey had actual notice of the motion on November 7, 2006, although the proof of service does not reflect that.

[4] Richard's brief also did not raise the question of standing, which we consider in the following part. We solicited and received supplemental briefing on that issue as well.

### 5. *Awarding Sanctions to Counsel*

■ Kathey maintains that the trial court erred in awarding fees to counsel rather than to Richard. But Kathey has failed to show how she is aggrieved by this aspect of the trial court's order. Only a party "aggrieved" is entitled to appeal. (Code Civ. Proc., § 902; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 181, p. 237 et seq.) Since reversal on this issue would not affect Kathey one way or the other, we do not consider this portion of her appeal. (Cf. *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 571 [187 Cal.Rptr. 200].)

### 6. *Content of the Section 128.7 Motion*

■ Under section 128.7, the papers to be served on the opposing party as notice of intent to file a section 128.7 sanctions motion must be the same papers that are ultimately filed with the court no less than 21 days later. (*Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 15 [76 Cal.Rptr.2d 171]; *Hart v. Avetoom, supra,* 95 Cal.App.4th at p. 414.) Kathey maintains that the section 128.7 motion that Richard filed on December 12, 2006, was not the same as the motion he served on her November 7, 2006, since it included counsel's updated declaration and other information. While that may be so, when Kathey raised this concern below, the trial court granted Richard's motion to strike the added information and ruled solely upon the original motion that had been attached as exhibit No. 1. There is no dispute that exhibit No. 1 was the very motion with which Kathey had been served on November 7, 2006. In effect, therefore, the motion conformed to the requirements of section 128.7.

### 7. *Imposing an Unreasonable Burden*

■ Family Code section 271, subdivision (a) provides, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." The policy of the law is to promote settlement and to encourage

cooperation which will reduce the cost of litigation. (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [22 Cal.Rptr.2d 537].) But the sanction must be scaled to the payor's ability to pay and must be made in light of both parties' financial circumstances. (*In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 59–60 [253 Cal.Rptr. 354].)

Kathey maintains that the court failed to consider the parties' respective financial positions when it imposed the sanctions under Family Code section 271 such that the resulting order imposes an unreasonable burden upon her. In reviewing the sanctions order, we indulge all reasonable inferences to uphold it. "We will not interfere with the order for sanctions unless the trial court abused its broad discretion in making it." (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177 [110 Cal.Rptr.2d 111].)

In granting the Family Code section 271 motion, the court found that, notwithstanding her repeated protestations to the contrary, Kathey "has a great deal of legal knowledge." Nevertheless, "[s]he insists on pursuing her way even when it is not appropriate. After notice and warning from the Court that she would not be successful in her motion, she persisted in proceedings. . . . The court finds, after considering the financial circumstances of the parties and their conduct, that an award of sanctions against [Kathey] is warranted. The court awards counsel for [Richard] the sum of $17,500 . . . ." The award was to be "secured by a lien against the Saratoga property and shall bear interest at 10 % simple interest until paid in full."

The trial court plainly did not disregard evidence of Kathey's ability to pay the sanctions. Indeed, the court expressly stated that it considered the financial circumstances of the parties and also specified that the award was to be secured by the "Saratoga property." The Saratoga property was a significant asset, the sale of which would provide Kathey with more than adequate resources to satisfy the sanctions order. The record, therefore, does not show that the award imposed an unreasonable burden.

D. *The April 2007 Sanctions Order*

1. *Opportunity to Be Heard on the Third Sanctions Motion*

Kathey maintains that the amount of notice she received for the hearing on Richard's third sanctions motion was a day short of the time required by Code of Civil Procedure section 1005. The irregularity is not reversible. "The principal purpose of the requirement to file and serve a notice of motion a specified number of days before the hearing ([Code Civ. Proc.,] § 1005, subd. (b)) is to provide the opposing party adequate time to prepare an opposition. That purpose is served if the party appears at the

hearing, opposes the motion on the merits, and was not prejudiced in preparing an opposition by the untimely notice." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 343 [26 Cal.Rptr.3d 854].)

Kathey's objection to the timing of the notice, both on appeal and at trial, was perfunctory. She claimed simply that the motion should have been stricken because the notice was a day short. She did not claim that the time was inadequate for her to prepare a complete response. Indeed, she prepared and filed points and authorities with supporting exhibits and a declaration, addressing not only the adequacy of the notice but also raising issues concerning whether counsel's declaration had been signed under penalty of perjury, clarifying the substance of her new trial motion and arguing its merits, defending the objections counsel had cited as frivolous, attacking counsel's credibility, and attacking the merits of the sanctions motion itself. Kathey was plainly not prejudiced by the slightly shortened notice.

Kathey also argues that the trial court did not allow her to argue her opposition to the sanctions at the hearing, but the portion of the record to which she directs our attention shows that the court cut off Kathey's attempt at further argument *after* the court had already ruled. The court had questioned Kathey about her motion for new trial and Kathey argued its merits. Richard's attorneys then argued their opposition to the new trial motion and, in support of the sanctions motion, pointed out that Richard had spent approximately $110,000 "because of Ms. Fyke's antics and repeated motions." The trial court turned to Kathey, giving her the opportunity to respond. After she argued, the court asked, "Okay. Anything else?" Kathey responded with more argument. Finally, the court ruled, denying the motion for new trial, "on the basis that there is absolutely nothing that has been presented here today that would even remotely give rise to the granting of such a motion. I think the motion has been filed recklessly, baselessly, is nonmeritorious—[¶] . . . [¶]—and is frivolous." The court went on: "And on that basis, I'm going to award attorney's fees . . . [a]nd also, pursuant to Family Code Section 271, I'm going to order that you pay additional sanctions of $20,000 to them."

Thereafter, Kathey attempted to raise the issue of timeliness, stating that she "would like to address [the Family Code section] 271 motion as being not timely." The court refused to hear the argument "[b]ecause the ruling has already been made. Thank you." Kathey plainly had ample opportunity to be heard. There was no error.

### 2. *Further Arguments*

With respect to the third motion for sanctions, Kathey again raises the concerns that Richard did not verify the moving papers and that the resulting

sanctions imposed an unreasonable burden on her. We reject the arguments for the reasons set forth above.

■ Kathey also claims that, because she did not directly attack the court's decision denying the contempt motion but instead focused her new trial motion on the trial court's refusal to grant a continuance or make an order for attorney's fees the new trial motion was "with merit and certainly not frivolous." Kathey also argues that Richard's Family Code section 271 motion did not describe the conduct for which he sought sanctions. Rather, his moving papers referred to Richard's papers opposing the new trial motion. Kathey provides no argument or citation to authority in support of either contention. We are not bound to develop appellants' arguments for them. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838].) The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived. (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126]; see also Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].) We do so here.

### E. *Conclusion*

■ We conclude that the trial court did not err in denying Kathey's contempt motion nor did it abuse its discretion in imposing a total of $64,500 in sanctions against her. The trial court found that Kathey's motions were reckless, baseless and frivolous. Such conduct is an abuse of the legal system that is "not fair to the opposing litigant who is victimized by such tactics." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506]; see also *In re Marriage of Economou* (1990) 223 Cal.App.3d 97, 106 [272 Cal.Rptr. 673].) Furthermore, whether the abuse involves the trial courts or the Courts of Appeal, other litigants are prejudiced by the useless diversion of the courts' attention. (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1433 [6 Cal.Rptr.3d 122].) And the judicial system and the taxpayers are damaged by what amounts to a waste of the court's time and resources. (*Ibid.*; see also *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510 [77 Cal.Rptr.3d 540].) Kathey's status as a self-represented litigant is no excuse. Although she is entitled to represent herself in propria persona (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [19 Cal.Rptr.3d 416]), self-represented parties are entitled to no greater consideration than other litigants and attorneys (*id.* at p. 1247).

## IV. *Disposition*

The orders of the trial court are affirmed.

Rushing, P. J., and Elia, J., concurred.