Filed 3/27/14  Moering v. Santa Barbara Cottage Hospital CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NANCY MOERING et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>SANTA BARBARA COTTAGE HOSPITAL, INC. et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B244410<br>(Super. Ct. No. 1372813)<br>(Santa Barbara County) |

Nancy Moering and Dean Moering appeal from judgment after jury trial in this action for negligence and medical malpractice against Santa Barbara Cottage Hospital, Inc. and Cottage Health System (collectively "Cottage").  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Our factual and procedural summary is based upon Cottage's brief and our own partial review of the record because the Moerings' opening brief does not support its factual references with citations to the record.  (Cal. Rules of Court, rule 8.204(a)(1)(C).)

In 2009, Nancy Moering had a total hip replacement surgery at Cottage.[1] About two days later, her hip became dislocated.  Nancy testified that this happened when a nurse's assistant pulled a pad out from under her and caused her body to shift

---

[1] We hereafter refer to Nancy Moering by her first name, not from disrespect, but to ease the reader's task.

suddenly. After the dislocation, Michael F. Maguire, M.D., attempted a closed reduction but it was not successful.[2] A second surgery was performed to reset the dislocated hip. A third surgery was necessary to replace the prosthesis.

Before trial, the trial court declined to admit a bulk exhibit that contained all of Nancy's medical records, but indicated it would rule on any part of the record that witnesses referred to during the course of the trial. Also before trial, the court sustained Cottage's hearsay objection to several exhibits that summarized statutes, regulations and standards for nursing care and medical record documentation. The court indicated that it would take judicial notice of any relevant provisions and incorporate them into the jury exhibits. It allowed the experts to describe these provisions when they testified about the standard of care and allowed them to refresh their memories by referring to them.

The Moerings presented two expert witnesses. Sharon McFerran, a registered nurse, testified about the standard of care applicable to nurses based on the California Code of Regulations, titles 16 and 22 and the Joint Commission on accreditation of hospitals (Joint Commission) standards. McFerran offered her opinion that Nancy's medical records were inadequate and contained errors, omissions, and inconsistencies. Based on her review of Nancy's medical records, she testified that Nancy had skin breakdown while at Cottage and that Cottage staff did not timely comply with physician's orders concerning her care. McFerran testified that the records lacked documentation of bathing and turning. She did not testify that any failure to comply with the applicable standard of care was a proximate cause of harm to Nancy.

Denise Welvang, a pharmacist, offered her opinion that Nancy did not receive adequate anesthesia during the hip revision surgery, that her pain was not properly controlled with medication, that she did not consistently receive nicotine patches, that her skin breakdown was not properly treated, that her medication was not properly ordered or administered, and that her chart contained omissions and errors. The

---

[2]The trial court entered judgment in Maguire's favor after granting his motion for summary judgment.

2.

Moerings did not elicit any opinions about violation of statutes, regulations or standards from her.

The Moerings also offered the testimony of Nancy's orthopedic surgeon, John Gainor, M.D. Gainor described his care and treatment of Nancy. The trial court admitted the records to which he referred. He testified that dislocation occurs approximately 3 percent of the time after a hip replacement in the absence of any negligence, but that dislocation in the hospital is rare. He said he believed Nancy was responsible for her dislocation. On cross-examination, he testified that he warned Nancy that dislocation is a risk of hip replacement surgery and advised her to stop smoking because smoking inhibits bone healing.

Cottage offered the testimony of several treating healthcare providers. A nurse's assistant testified that, after she helped Nancy walk from a chair to the bed, transferred her into bed, and placed a pillow between her legs, Nancy told her she heard something pop. The assistant contacted a nurse. Carissa Hampton, R.N., testified that Nancy told her she heard a pop and thought she dislocated her hip. The treating charge nurse, Emily Wissink, R.N., described the steps taken immediately after the dislocation. A treating physical therapist, Mariann Thomas, described the precautions Cottage personnel took to reduce Nancy's risk of dislocation. She testified that Nancy was not compliant and needed to be reeducated on the precautions. The trial court admitted nursing notes and physical therapy notes offered by Cottage during this testimony.

Cottage also presented the expert opinion of Michelle Jones, R.N., that the Cottage nursing staff complied with the applicable standard of care; that Nancy received appropriate care and treatment at Cottage; and that Cottage personnel properly managed her pain, followed physician's orders, and evaluated and treated her skin breakdown. Jones testified that Nancy was not compliant with physical therapy despite appropriate instruction. She testified that the Joint Commission standards are optional guidelines.

A board certified orthopedic surgeon, Stuart Gold, M.D., testified that Nancy's hip dislocated because there was insufficient bone ingrowth following her hip

replacement surgery, not due to any fault of a physician or nursing staff. He testified that dislocation occurs 3 to 6 percent of the time in the absence of any negligence.

Before the last witness was to testify, the trial court heard Cottage's motion for nonsuit. Cottage argued that there was no expert testimony on breach of the standard of care or causation. The trial court denied the motion because, it reasoned, a jury could find the nursing assistant dislocated the hip when she moved the pad on a theory of res ipsa loquitor without expert testimony. The court cautioned the Moerings' counsel that this was the only viable theory on the evidence presented; that there was no expert evidence of a breach of the standard of care or causation; and that it would not be instructing on any statutes, regulations or standards concerning documentation or nursing care in the absence of such evidence.

During argument on the nonsuit motion, the Moerings' counsel said she wished to rebut Jones' testimony that the Joint Commission standards are optional. She said, "I would like to bring Miss Welvang to say they are not optional." The trial court said, "First of all, you're not going to call Miss Welvang in for rebuttal . . . . Secondly, that has nothing to do with the nonsuit motion."

When the defense rested, the Moerings' counsel said she wished to present "two points of rebuttal" through Nancy's testimony. After recess, the trial court stated on the record, "We have reached the end of the evidence. There will be no further testimony." The Moerings' counsel did not put any offer of proof or further argument concerning rebuttal on the record.

The trial court instructed the jury on the standard of care for nurses and hospitals and instructed the jury on res ipsa loquitor. The Moerings did not object to the instructions and did not propose any special instructions.

While the jury was deliberating, the Moerings' counsel told the trial court she wished to make a record. She offered additional arguments why she should have been allowed to call Welvang in rebuttal. The court commented that it would have been

4.

rebuttal on a collateral issue because "that has nothing to do with the negligence and malpractice causes of action that you brought to court."

The jury deliberated for two hours and found Cottage was not negligent with respect to Nancy's diagnosis or treatment.

DISCUSSION

*Compliance with the Rules of Court*

The Moerings' opening brief does not comply with the rules of appellate procedure. It does not include a summary of the significant facts with supporting citations to the record. A judgment or order of the lower court is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. (*Ibid.*) An appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)

Very few of the Moerings' factual and procedural references are supported by citation to the record, and this court is left to guess in most instances where the rulings they complain of appear. "We are not required to search the record to ascertain whether it contains support for [appellant's] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["One cannot simply say the [trial] court erred, and leave it up to the appellate court to figure out why"].) The Moerings did not file a reply brief after these omissions were brought to their attention by Cottage's brief.

*Statutes, Regulations and Standards*

The Moerings forfeited their claims that the trial court erred by excluding the text of statutes, regulations and standards and by omitting an instruction about them.

5.

The Moerings contend that the trial court erred because it did not admit the text of California statutes and regulations or the Joint Commission standards. The Moerings also contend the trial court did not fulfill a promise to take judicial notice of these materials and to "'fix it' in jury instructions.'" The Moerings have not supported these contentions with references to the record, but we understand them to refer to the pretrial ruling on Cottage's hearsay objection to their exhibits that summarized or set forth statutes, regulations and standards for nursing care and charting. The trial court indicated that the exhibits would not be admitted into evidence, but it would take judicial notice of them if any were "on point" and include them in the jury instructions. We find no special instructions proposed by the Moerings in the record and no objections to the instructions that were given.

Moreover, the trial court allowed the Moerings' experts to present their opinions about the applicable standard of care and to explain the statutory and regulatory basis of those opinions. McFerran testified about the California Code of Regulations, titles 16 and 22 and the Joint Commission standards. The trial court sustained an objection when McFerran tried to read these materials aloud, because they were not in evidence, but the court encouraged her to use them to refresh her memory if necessary. Moreover, the statutes, regulations and standards were irrelevant in the absence of any expert testimony that Cottage's breach of the standard of care caused Nancy harm. The Moerings' counsel conceded that the "codes and regulations . . . were not used." The trial court did not abuse its discretion when it did not admit the materials or instruct the jury on their contents.

*Exclusion of Exhibit Containing Nancy Moering's Entire Medical Record*

The trial court did not abuse its discretion when it refused to admit Nancy's entire medical record as a bulk exhibit before trial.

The Moerings contend the trial court erroneously sustained a hearsay objection to Nancy's medical records but did not identify the ruling by citation to the record. We assume they refer to the pretrial discussion about Cottage's hearsay objection

to exhibit 11, Nancy's entire medical record. Exhibit 11 consisted of about 300 pages and was produced by Cottage's custodian of records. The Moerings' counsel agreed on the record that specific pages of the medical records would be authenticated and admitted during trial when referenced by a witness.

Following this procedure, the trial court admitted many portions of the medical records as they were referred to by witnesses. The court also allowed the Moerings' expert to describe the medical records in detail. The Moerings' counsel did not always move to admit the records to which their witnesses referred. At the close of the Moerings' case in chief, the court reviewed those parts of exhibit 11 that had been authenticated and admitted, and counsel expressed no objection to the list. That the Moerings did not offer additional portions of the records into evidence was not the trial court's error.

*Recall of the Moerings' Expert*

The Moerings do not demonstrate that the trial court abused its discretion by limiting rebuttal.

The Moerings contend, without reference to the record, that the trial court precluded them from presenting Welvang to testify in rebuttal. We construe this as a reference to counsel's request during the nonsuit argument to rebut the testimony of Jones that the Joint Commission standards are optional guidelines. The trial court did not abuse its discretion by disallowing the rebuttal. The Moerings had a full and fair opportunity to present testimony about the Joint Commission standards in their case in chief and did so through the testimony of McFerran. They made a tactical decision not to have Welvang testify about the standards, possibly because she was a pharmacist and not a nurse. The question of whether the standards were optional or mandatory was not new and was collateral in the absence of any expert opinion that deviation from those standards fell below the applicable standard of nursing care and was a proximate cause of harm to Nancy.

7.

*Jury Instructions*

The Moerings contend that the trial court erred by giving a res ipsa loquitor instruction without clarifying that the jury could find negligence on that theory without relying on expert opinion.  The Moerings do not cite to any request for such an instruction in the record.  They forfeit the claim.

### DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


8.

Denise de Bellefeuille, Judge

Superior Court County of Santa Barbara

_____


Law Office of Lorraine Anderson, Lorraine Anderson for Plaintiffs and Appellants.


Reback, McAndrews, Kjar, Warford, Stockalper & Moore, LLP, Thomas F. McAndrews, Beth Ann Younggren, Cindy A. Shapiro for Defendants and Respondents.