Filed 1/21/22  Sharpe v. Structural Pest Control Board CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RONJIEL SHARPE et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>STRUCTURAL PEST CONTROL BOARD,<br><br>　　　Defendant and Respondent. | A162226<br><br>(Alameda County<br>Super. Ct. No. RG20062857) |

Pursuant to its authority under the Structural Pest Control Act (the Act; Bus. & Prof. Code, § 8500 et seq.),[1] the Structural Pest Control Board (Board) revoked Ronjiel Sharpe's pest control operator license and denied the registration application filed on behalf of Precise Management, Inc. (Precise).  Sharpe and Precise appeal from a judgment denying their petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5).  Sharpe contends that the Act's licensing requirements are preempted by federal law or violate the Contract Clause.  We affirm.

---

[1] Undesignated statutory references are to the Business and Professions Code.

1

## BACKGROUND

### A.

Under California law, persons engaged in, or offering to engage in, structural pest control are generally required to obtain licenses from the Board. (§ 8550; *Merrifield v. Lockyer* (9th Cir. 2008) 547 F.3d 978, 980.) Corporations similarly engaged are required to register with the Board. (§§ 8514, subd. (c), 8550, subds. (b), (e), 8610, subd. (a).)

### B.

In June 2018, Precise successfully bid on a contract to perform structural pest control work for the United States Department of Veteran Affairs (the department) at its facilities in California.

The department required Precise and any personnel be licensed in California before beginning work under the contract. At the time Precise was awarded the contract, neither Sharpe nor Precise held California licenses to perform structural pest control.

In early July 2018, Precise began performing the contracted pest control work—using subcontracted local pest control companies—at the department's California facilities. About two weeks later, the Board sent Sharpe and Precise a "cease and desist" letter. The Board directed Sharpe and Precise to stop pest control operations until they were properly licensed and registered, as required by the Act. The letter cautioned, "[f]ailure to comply with this Notice will result in a formal investigation and disciplinary actions against you and your Company."

Precise later filed an application for company registration. And, in November 2018, the Board issued an operator's license to Sharpe. Between July and November, however, Precise

2

continued to perform and bill the department for work under the contract.

The Board initiated disciplinary proceedings against Sharpe and Precise. Both filed a motion to dismiss, arguing that California lacks authority to regulate pest control work on federal property. The Board denied the motion, stating it "lacks jurisdiction to grant relief on that basis".

After a hearing that Sharpe did not attend, the Board revoked his operator license (§§ 8620, 8623, subd. (a)), concluding that, by performing work without a license and while Precise was not registered, he violated the Act (§ 8641) and had aided and abetted an unregistered company in evading the Act (§ 8639). The Board also denied Precise's registration application (§ 8568).

## C.

Sharpe and Precise filed a petition for writ of administrative mandamus, seeking to set aside the Board's license revocation and registration decisions. They argued, with very little in the way of explanation, that the Act violates the Contract Clause of the United States Constitution and that the Act is preempted by federal law. The trial court entered judgment denying the petition for writ of mandate.

## DISCUSSION

## A.

Sharpe and Precise insist that the Act is preempted by federal law. But they fail to meet their burden to show error. (See *Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 956 (*Bronco Wine*) ["party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption"]; *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443 [appellant bears burden of affirmatively demonstrating error].)

3

"Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. (*Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 372 . . . .) In determining whether federal law preempts state law, a court's task is to discern congressional intent." (*Bronco Wine, supra*, 33 Cal.4th at p. 955.) However, we assume that a state's historic police powers are not preempted " ' "unless that [is] the clear and manifest purpose of Congress." ' " (*Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 923 (*Dowhal*).)

Federal preemption takes three forms: express statutory preemption, field preemption, and conflict preemption. (*Crosby v. National Foreign Trade Council, supra,* 530 U.S. at pp. 372-373 & fn. 6; *Bronco Wine, supra,* 33 Cal.4th at p. 955.) Sharpe and Precise do not identify any express preemption provision or comprehensive scheme of federal regulation. We are concerned only with conflict preemption.

Conflict preemption exists when " 'it is impossible for a private party to comply with both state and federal requirements . . . or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " (*Dowhal, supra,* 32 Cal.4th at p. 923.) "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" (*Crosby v. National Foreign Trade Council, supra*, 530 U.S. at p. 373.)

Sharpe and Precise also fail to affirmatively demonstrate a conflict between state and federal law making it impossible for them to comply with both state and federal requirements. (See *Dowhal, supra*, 32 Cal.4th at p. 923.) Instead, they make skeletal references to three federal statutes, as well as the Act, and suggest that the application of California's licensing and

registration requirements to federal contractors presents an obstacle to Congressional goals.  (See *ibid*.)  But they do not explain why it is impossible to comply with both state and federal requirements.  Nor do they explain how any provision of state law presents an obstacle to accomplishing Congress's goals.

Sharpe and Precise cite *Leslie Miller, Inc. v. Arkansas* (1956) 352 U.S. 187 (*Leslie Miller*) without explanation.  In that case, the Supreme Court held that an Arkansas licensing law could not be applied to a contractor hired by the federal government to construct facilities at an air force base in Arkansas.  (*Id.* at pp. 187-188, 190.)  The federal Armed Services Procurement Act of 1947 (41 U.S.C. § 152) provided that the contract should be awarded " 'to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the Government, price and other factors considered.' " (*Leslie Miller,* at p. 188.)  The governing federal regulations—which were discussed in detail—enumerated certain criteria for the agency to consider in determining whether a contractor was " 'responsible.' " (*Id.* at pp. 188-189.)  The Arkansas licensing law, which was also analyzed in detail, listed similar factors to be considered in determining whether its licensing board should grant a contractor's license.  (*Ibid*.)  Given this significant overlap, the Supreme Court held that the federal and state schemes "conflict" because the state licensing board could exercise a virtual veto power over a contractor whom the federal government found " 'responsib[le.]' " (*Id.* at p. 190.)

We do not read *Leslie Miller* as categorically barring states from applying licensing laws to federal contractors.  To meet their burden to demonstrate federal preemption, it remains incumbent on a federal contractor to demonstrate how a state licensing law conflicts with federal law or presents some obstacle to Congressional objectives.  (See *Leslie Miller, supra,* 352 U.S. at p. 189 [explicitly reviewing federal government's "

'responsibility'" factors and comparing those to Arkansas licensing law]; *Gartrell Construction Inc. v. Aubry* (9th Cir. 1991) 940 F.2d 437, 439 (*Gartrell*) [detailing similarities in federal contracting requirements and state licensing law that show California was "effectively attempting to review the federal government's responsibility determination"].) Sharpe and Precise fail to do so.

Sharpe and Precise cite *Leslie Miller* and *Gartrell* without explaining how these authorities support their position, they superficially identify some of the federal contracting laws purportedly at issue but do not identify the laws' substantive requirements, and they wholly fail to address the Act's requirements. It is not our role to construct arguments on appellants' behalf. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

Because Sharpe and Precise have forfeited their conflict preemption argument (see *People v. Stanley* (1995) 10 Cal.4th 764, 793 [reviewing courts may disregard points missing cogent legal argument]), we express no opinion on the merits of their position.

## B.

The Act does not violate the Contract Clause of the United States Constitution.

The Contract Clause provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." (U.S. Const., art. I, § 10, cl. 1.) Although absolute on its face, "the Contract Clause does not operate to obliterate the police power of the States." (*Allied Structural Steel Co. v. Spannaus* (1978) 438 U.S. 234, 241.)

Sharpe and Precise cannot demonstrate a change in the law that substantially impaired a contractual relationship. (See *Energy Reserves Group v. Kansas Power & Light Co*. (1983) 459

6

U.S. 400, 411.)  The Act's licensing requirements were in existence *before* Precise contracted with the department. (*Merrifield v. Lockyer, supra*, 547 F.3d at p. 981.)  " 'One whose rights . . . are subject to state restriction, cannot remove them from the power of the State by making a contract about them.' " (*Allied Structural Steel Co. v. Spannaus, supra,* 438 U.S. at pp. 241-242.)  In any event, because the department itself requires Sharpe and Precise to be licensed under the Act, they fail to persuade us that any contractual obligations are rendered "invalid, or release[d] or extinguishe[d]" by the Act.  (*Home Building & Loan Ass'n. v. Blaisdell* (1934) 290 U.S. 398, 431.)

## DISPOSITION

The judgment is affirmed.  The Board is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

NEEDHAM, J.

A162226