Filed 10/6/20  In re David M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re DAVID M., a Person Coming Under the Juvenile Court Law. | B298680 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent;<br><br>     v.<br><br>CLAUDIA V.,<br><br>     Respondent;<br><br>JOSE M.,<br><br>     Defendant and Appellant. | Los Angeles County Super. Ct. No. DK03185A |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen Marpet, Judge Pro Tempore. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Elizabeth Klippi, under appointment by the Court of Appeal, for Respondent.

---

## INTRODUCTION

Jose M. (father) appeals from the juvenile court's order terminating jurisdiction over his son David M. and awarding Claudia V. (mother) sole physical custody of the child. Father contends the court abused its discretion when it awarded him only monitored visitation after relying on a permanent restraining order that the family court issued while this case was pending. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In January 2014, the Department of Children and Family Services (Department) filed a dependency petition under Welfare and Institutions Code[1] section 300 on behalf of David (then 18 months old) and his younger brother Isaias M. (then nine months old), alleging: (1) Isaias suffered non-accidental injuries, including rib and leg fractures, while in the parents' custody (a-1, b-1, e-1, and j-1 allegations); (2) mother and father failed to obtain timely and necessary medical care for Isaias's injuries (b-2

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

and j-2 allegations); (3) mother and father have a history of engaging in domestic violence (a-2, b-4 allegations); and (4) father has a history of substance abuse and is a current cocaine user (b-3 allegation). At the time the Department filed the petition, mother and father were separated and the children lived with mother. The court found the petition alleged a prima facie case under section 300 and detained the children from their parents' custody.

The court sustained the children's petition in October 2014.[2] The court declared David and Isaias dependents of the court, ordered them to remain placed outside of mother's and father's custody, and awarded mother and father reunification services.

In January 2015, the Department filed a subsequent petition under section 342, alleging Isaias suffered non-accidental bruising and redness on his head, including a hand-shaped mark on the side of his face and bruising on his ear, while he was alone in father's custody. The court sustained the subsequent petition in March 2015 and, in May 2015, ordered the Department to provide mother and father additional reunification services.

In April 2016, the court found mother and father had not complied with their case plans. The court terminated the parents' reunification services and scheduled a selection and implementation hearing under section 366.26.[3] The court

---

[2] Specifically, the court sustained the a-1, b-1, b-3, b-4, e-1, and j-1 allegations and struck the a-2, b-2, and j-2 allegations.

[3] In September 2016, we denied mother's writ petition challenging the order terminating her reunification services and setting the selection

eventually held a selection and implementation hearing as to Isaias only. The court terminated mother's and father's parental rights and Isaias was later adopted.

In June 2017, father filed a petition under section 388, asking the court to modify its order terminating his reunification services as to David. The court granted father's petition in August 2017, awarding him six additional months of reunification services and unmonitored visits with the child. The court ordered father to participate in individual counseling and "Parent Child Interaction" therapy with David and to submit to weekly drug tests.

In November 2017, father tested positive for alcohol and failed to show up for a drug test. Father became upset and verbally aggressive when the Department's social worker advised him that a missed drug test is considered a positive test. The court restricted father to monitored visits in January 2018 based on his positive test for alcohol and missed drug test.

In June 2018, father told the Department he had completed individual therapy and joint therapy with David. All of father's toxicology tests to that point were negative for drugs and alcohol. Later that month, the court authorized father to have unmonitored visits with David.

In August 2018, the court found father had made substantial progress in his court-ordered case plan and returned David to his custody. The court advised father that the Department was authorized to remove David from father's custody if he tested positive for drugs or alcohol. The court

---

and implementation hearing. (*Claudia V. v. Superior Court of the State (In re David M.)* (Sept. 27, 2016, B271730) [nonpub. opn.].)

ordered father to continue participating in individual counseling. The court granted mother's section 388 petition, awarding her family maintenance services and unmonitored visits with David.

In November 2018, the Department filed a supplemental petition under section 387, alleging father failed to comply with his court-ordered case plan because he continued to test positive for alcohol and produce invalid toxicology test results. The court found the supplemental petition alleged a prima facie case under section 300 and ordered David detained from father's custody and placed in mother's custody. The court awarded father monitored visits with David and ordered father to attend "AA/NA" meetings three times a week and to continue submitting to weekly random drug and alcohol tests.

The court sustained the section 387 petition in January 2019. The court ordered David to remain placed in mother's custody and awarded father unmonitored visits on the condition he continue to test negative for drugs or alcohol with no missed tests.

In mid-March 2019, father refused to return David after one of their visits. When mother went to pick David up, father walked out of his home and started yelling and cursing at her. Mother became scared for her safety and drove to a police station to report father. The police told mother she couldn't file a report because father didn't commit a crime.

The next day, mother returned to father's home to pick up David. Father brought David outside and started yelling and cursing at mother again. Father then called a parent advocate and started yelling and cursing at the advocate in front of mother and David. Father complained that mother had caused "drama," and he accused the advocate of being on mother's side. The

advocate tried to deescalate father's behavior because David was present and aware of how father was acting. While father was talking to the advocate, he put David inside mother's car. When David rolled down the car's window, father reached inside, unlocked the door, and tried to get inside the car. As mother drove away, father yelled " '[s]he's trying to kill me.' "

In late March 2019, father approached mother while she was sitting in her car in front of David's school and on the phone with the parent advocate. Father cursed at mother and got inside her car.

In late April 2019, father confronted mother again while she waited to pick David up at school. When father started cursing and flashing obscene gestures at mother in front of David, mother began recording the encounter with her cell phone's camera. Father then reached inside mother's car and tried to grab the phone, hurting mother's wrist and hand. On the video, father could be heard telling David "not to worry" because father had "already spoken to his attorney regarding these matters." After mother reported father's conduct, the police advised her to apply for a restraining order.

As of May 2019, David's school had banned father from coming onto or near school grounds because he had acted "inappropriate[ly]." The school's principal also established a "special school pick up schedule" for mother so she could avoid father when picking David up from school.

Father's wraparound facilitator was concerned about father's behavior both during joint counseling sessions with David and outside of counseling. Father would sometimes focus only on himself and his own issues during sessions. The

facilitator also noted that father had difficulty controlling his language and behavior when he was around the child.

In early May 2019, mother filed a request for a domestic violence restraining order against father in the family court. Mother sought an order precluding father from contacting her and David or coming within 100 yards of them and limiting father to only monitored visits with David. In addition to describing the April 2019 incident at David's school, mother reported that father had been verbally abusive toward her and David in the past. Father had repeatedly said, " 'fuck you' " to mother in front of David. Father had also threatened to use explicit videos against mother and told her she is a " 'whore' " and a " 'fat zero.' "

The family court partially granted and partially denied mother's request for a temporary restraining order. The court precluded father from contacting mother and David or coming within 100 yards of them, except as authorized by the juvenile court's visitation orders. On the Notice of Court Hearing form issued with the temporary restraining order, the court explained it partially denied mother's request because it was making "no orders regarding custody or visitation since there is an open DCFS investigation. Court defers matter to DCFS."

The family court held a hearing on mother's request for a restraining order on May 24, 2019. Mother and father were present at the hearing. The family court issued a three-year restraining order precluding father from coming within 100 yards of mother and David or contacting them in any form, except for peaceful contact as required for court-ordered visitation.

On May 28, 2019, the court commenced a review hearing under section 364. The court advised father that because mother

7

had obtained the restraining order, he needed to refrain from contacting her in any form and, if he did, he could be arrested. The court restricted father to monitored visits with David and continued the matter for a contested review hearing at father's request.

On June 21, 2019, the court held the contested review hearing. The court terminated jurisdiction, awarded mother sole legal and physical custody of David, and awarded father monitored visits with the child. In issuing its exit order, the court explained that father "has an anger issue and has acted out incredibly inappropriate[ly] with mother," which caused her "to get a restraining order in the last two months." The court ordered mother not to monitor father's visits and stated that the "three-year restraining order" needed to be attached to the exit order. The court advised father to use a third party or "family law communication" to arrange visitation.

Father appeals from the court's exit order.

## DISCUSSION

### 1. Applicable Law and Standard of Review

A juvenile court has broad discretion to make custody and visitation orders tailored to the child's best interests when it terminates jurisdiction in a dependency case. (§ 362.4; see also *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) In deciding whether and how parental visitation should continue when issuing an order terminating jurisdiction, the court must consider the best interests of the child under the totality of the circumstances. (*In re John W.* (1996) 41 Cal.App.4th 961, 972.)

We review custody and visitation orders issued when the court terminates jurisdiction for abuse of discretion. (*In re Cole Y.*

(2015) 233 Cal.App.4th 1444, 1456.) Accordingly, we will not disturb an exit order determining a parent's custody and visitation rights unless it constitutes an " ' "arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) In other words, if we can draw two or more reasonable inferences from the facts, we will not substitute our discretion for that of the juvenile court. (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.)

## 2. Father has not shown the court abused its discretion in issuing the exit order.

Father contends the juvenile court abused its discretion when it awarded him only monitored visitation with David as part of its exit order terminating jurisdiction. Specifically, father argues the court erred when it left in place the family court's May 2019 restraining order and relied on that order in deciding to limit his visitation. According to father, the family court lacked jurisdiction to issue the restraining order because section 304 granted the juvenile court exclusive jurisdiction over custody and visitation issues while David's dependency case was pending. This argument is not well-developed.

It is a fundamental principle of appellate practice that a reviewing court is not obligated to develop an appellant's arguments for him. "Conclusory assertions of error are ineffective in raising issues on appeal. [Citation.]" (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523.) Consequently, "[t]he absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone & Fyke*).)

9

In challenging the validity of the restraining order in his opening brief, father includes only: (1) a block quote from section 304[4]; and (2) a citation to *A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1389 to support the general proposition that juvenile courts have exclusive jurisdiction over custody and visitation issues while a child's dependency case is pending. Father then states in conclusory fashion that the juvenile court had exclusive jurisdiction to issue restraining orders concerning the family in this case.

Father engages in no meaningful analysis, however, to explain why the restraining order issued by the family court falls within the scope of the juvenile court's exclusive jurisdiction over custody and visitation issues, why the juvenile court had the authority to vacate an order it did not issue, or why an appeal from the juvenile court's exit order is the proper vehicle to

---

[4] Section 304 provides in relevant part: "While the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court. In deciding issues between the parents or between a parent and a guardian regarding custody of a child who has been adjudicated a dependent of the juvenile court, the juvenile court may review any records that would be available to the domestic relations division of a superior court hearing that matter. The juvenile court, on its own motion, may issue an order as provided for in Section 213.5, or as described in Section 6218 of the Family Code. The Judicial Council shall adopt forms for these restraining orders. These form orders shall not be confidential and shall be enforceable in the same manner as any other order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code. [¶] This section shall not be construed to divest the domestic relations division of a superior court from hearing any issues regarding the custody of a child when that child is no longer a dependent of the juvenile court."

challenge the restraining order. In fact, father doesn't even acknowledge that, in issuing the temporary restraining order, the family court stated that it was making "no orders regarding custody or visitation" because David's dependency case was still pending in the juvenile court. Because father fails to develop his argument beyond a conclusory claim of error, he has waived any challenge concerning the validity of the May 2019 restraining order. (*Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830.)

We also reject father's argument that the juvenile court abdicated its authority to define his visitation rights by deferring to the restraining order. (See *In re S.H.* (2003) 111 Cal.App.4th 310, 317 [the juvenile court must determine whether and how frequently a parent may visit his child; the court cannot delegate that responsibility to a third party].) Although the court referenced the restraining order when it issued its ruling limiting father to monitored visits with David, nothing in the record indicates the court delegated the decision to decide father's visitation rights, including the frequency of visits, to any third party. Rather, the juvenile court merely advised father that because of the restraining order, he needed to communicate with mother through a third party when scheduling visits. (See *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 [court may delegate to a third party the responsibility for arranging and managing the details of visits, such as their time, place, and manner].)

In addressing the juvenile court's decision to limit his visitation, father focuses only on whether the court abdicated its duty to determine the extent of his visitation rights. Father does not address in any detail whether the facts of this case support the court's decision to restrict him to monitored visitation.

11

Father, therefore, has failed to show the court abused its discretion in awarding him only monitored visits with David.

In any event, overwhelming evidence supports the juvenile court's decision to limit father to monitored visitation. In the months leading up to the court's termination of jurisdiction, father repeatedly engaged in inappropriate and violent behavior around mother and David. For instance, in March 2019, father refused to return David to mother's custody after a scheduled visit. When mother first tried to pick David up after the visit, father screamed and cursed at her, causing her to leave David at father's home and report father's behavior to the police. Father engaged in similar behavior when mother tried to pick David up the next day, this time screaming and cursing at mother and the parent advocate in front of David. Father also confronted mother in front of David at the child's school on several occasions, often cursing and yelling at her, causing the school's principal to ban father from coming onto school grounds. And, on one occasion less than two months before the court terminated jurisdiction, father physically attacked mother in David's presence and tried to talk to the child about case issues. In short, the court acted well within its discretion to conclude it was in David's best interests to limit father to monitored visitation, and it is not reasonably probable the court would have reached any other decision had the family court not issued the restraining order. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876 ["We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result."].)

**DISPOSITION**

The juvenile court's exit order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

DHANIDINA, J.