Filed 11/18/20  Dow v. Mousa CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TONY DOW et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>MAISSAA MOUSA,<br><br>    Defendant and Appellant. | B293094<br>(Los Angeles County<br>Super. Ct. No.  BC606901) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Law Offices of Vip Bhola and Vip Bhola for Defendant and Appellant.

Morris & Stone and Aaron P. Morris for Plaintiffs and Respondents.

# INTRODUCTION

Appellant Maissaa Mousa told others that respondent Tony Dow had abused her during a business trip by, inter alia, holding her as a prisoner, providing her insufficient food, and sexually harassing her. Dow and his company, respondent International Patients Network (IPN), sued appellant for defamation. Following trial, a jury found for respondents and awarded them over $130,000 in damages.

On appeal, appellant raises numerous claims. As discussed below, her claims are either unpreserved, undeveloped, meritless, or some combination of the above. We therefore affirm.

# BACKGROUND

## A. *The Parties, Their Prior Lawsuits, and Respondents' Defamation Action*

Dow is the president and chief executive officer of IPN, a medical-tourism company, which provides international medical referrals and placement services for medical treatment. Appellant immigrated with her family to the United States from Syria in 2009, and was referred to Dow by Ikhlas Akra,[1] a mutual friend, after appellant had difficulty finding meaningful employment. In late 2012, Dow and appellant agreed that she would travel to Beirut, Lebanon, where Dow was then on business, so he could

---

[1] Because multiple members of the Akra family were involved in this case, we refer to them by the first names.

2

evaluate her qualifications to serve as his assistant. Appellant travelled to Beirut and spent three weeks at Dow's apartment there. Appellant then travelled to France, where she was to await Dow's arrival. However, after spending a week in Paris, she decided to return to the United States before Dow arrived.

After appellant's departure, a financial dispute arose between the parties, and finally, on January 5, 2015, IPN sued appellant, seeking $4,000 in reimbursements. In February 2015, appellant responded with a cross-complaint, alleging Dow had subjected her to all manner of abuse and sexual misconduct while she was staying at his Beirut apartment. Less than a year later, on January 13, 2016, respondents filed this defamation action against appellant, and the matter proceeded to trial.

B. *The Trial*

1. *Respondents' Case*

At trial, respondents claimed appellant had defamed them by telling others that during her trip to Lebanon, Dow sexually harassed her (including by remaining nude at all times), held her as a prisoner (including by holding her passport), and did not provide her sufficient food.[2] Respondents presented the testimony of Ikhlas, Hayat, Ilham, and Mountaha Akra, sisters who had been close

---

[2] Dow represented himself at trial, while IPN was represented by counsel.

friends of appellant and her family.[3]  The four provided largely consistent testimony supporting the following version of events.  When appellant returned from her trip to Beirut and Paris, she was very happy and described it as the trip of a lifetime.  She reported that while she was in Lebanon, Dow assigned a driver to take her anywhere she wanted, and she was able to visit her brother-in-law multiple times.  She further reported that Dow provided a lot of food.  Appellant told the Akra sisters about Liza Shigute, who had worked for Dow as a maid and stayed at his Beirut apartment during part of the time appellant was there until Dow fired her for stealing.  Appellant recounted keeping her passport with her at all times because she feared that Shigute would steal it.  Appellant thanked Ikhlas for referring her to Dow, and said nothing bad about him until 2015.  After respondents filed their original suit seeking reimbursement in early 2015, appellant started saying bad things about Dow, including that he kept her passport from her, that he did not provide her sufficient food, that he was always naked,[4] and that he sexually harassed her, adding new claims over time.  Appellant would make these claims to members of the Akra family and to anyone who happened to be present where the family gathered.  Appellant later told Ilham and Hayat that

---

[3]      Hayat was not present at trial, but a video of her deposition testimony, which included her cross-examination by appellant's counsel, was played to the jury.

[4]      Ikhlas noted at trial that she had previously worked for Dow, and had never seen him work in the nude.

4

her then-lawyer, Motaz Gerges, had fabricated the allegations to use as leverage in the litigation against Dow.

Respondents also presented the deposition testimony of three witnesses who had observed appellant at Dow's apartment in Beirut: Ali Rahel and Nehme Shreim, who worked for Dow as drivers, and Yasen Olbi, a patient who stayed at Dow's apartment at the time. All three witnesses testified that Dow had treated appellant well, had provided ample food, and had never been unclothed in their presence. Rahel further stated that Dow had instructed him to take appellant wherever she wanted, and that he indeed drove her to many locations around the city. He recounted that appellant would present her passport for identification whenever they passed through security checkpoints, of which Beirut had many. Other witnesses familiar with Beirut confirmed there were many checkpoints in the area of Dow's apartment.

Dow himself testified, denying all of appellant's allegations. Finally, respondents presented the deposition testimony of Patrick Rosa, who owned and operated a medical-tourism company in Belgium. Rosa testified his company had a longstanding business relationship with IPN until 2015. In 2015, he began hearing about appellant's accusations against Dow during professional conventions. Rosa described calling either Ikhlas or Ilham, both of whom he knew through Dow, to ask about the allegations, and was told there were indeed "talks" about the claims. He explained that given the sensitive nature of his business, he

5

could take no chances and was forced to stop his business relationship with IPN. Rosa testified that in the years preceding 2015, his company paid IPN an average of 150,000 to 180,000 euros per year for various services. He further testified that before he stopped doing business with Dow, they had been working on a certain project that Rosa estimated could have generated 50 million euros in revenue over ten years.[5]

2. *Appellant's Case*

Appellant's defenses at trial were that the statute of limitations barred Dow's claims, and that her allegations against him were true. Appellant testified on her own behalf, asserting that Dow had abused and mistreated her, in accord with the allegations previously discussed. She denied having had a driver to take her where she pleased and claimed there were no security checkpoints in the area of Dow's apartment. Appellant claimed that in early 2013, she told Hayat "what happened" in Beirut, and asked her to tell Ikhlas about it.

Appellant also presented Shigute's deposition testimony. Shigute supported appellant's claims that Dow had been constantly naked, had sexually harassed appellant, and had not provided enough food.

---

[5] Respondents also called appellant's husband, Yaser Ajib, and Dow's wife, May, but the content of their testimony is not pertinent to the issues on appeal.

C. *The Jury's Verdict*

Following trial, the jury returned a special verdict, finding that appellant's allegations against Dow were all false, that she did not make them before January 13, 2015 (one year before respondents filed this action), and that her conduct had caused respondents substantial harm. The jury awarded respondents $75,000 for economic harm, and further awarded Dow $60,000 for noneconomic harm. The trial court entered judgment on the verdict, and this appeal followed.

## DISCUSSION

A. *The Lack of an Interpreter*

    1. *Background*

At trial, several witnesses, including appellant, testified with the assistance of an Arabic interpreter. However, appellant's testimony took longer than expected, and the interpreter could not remain to assist her. The following colloquy ensued between the trial court and appellant's counsel:

"The court: my question is . . . does your client wish to testify in English? I know that she speaks English. . . .

"Mr. Bhola: Yeah, we could try English.

7

"The court: Are you sure that's something that you want to do? Do you want to talk to her about it?

"Mr. Bhola: Sure.

"The court: I don't want to deprive her of an interpreter."

Appellant then stated she would try to testify in English, and the interpreter left the courtroom. The court reiterated to appellant's counsel: "It's up to you. It's up to you, whether you want to waive the interpreter or not," to which counsel replied, "I'd like to try it, just to keep going, if we can." Appellant then proceeded to testify without the aid of an interpreter, raising no objection or concern.[6]

2. *Analysis*

Appellant claims she was forced to testify without the assistance of an interpreter. She also complains the interpreter did not aid her in listening to the testimony of other witnesses. Appellant failed to preserve these claims for appeal. Appellant and her counsel affirmatively "waived" her right to enlist the assistance of an interpreter, following the court's emphasis that the choice was theirs and that it

---

[6] While it was clear that appellant was not a native English speaker, her testimony was intelligible and responsive to the questions she was asked.

"did not wish to deprive [appellant] of an interpreter." (See *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1182 [party who expressly agrees to action in trial proceedings may not challenge it on appeal].) Moreover, appellant forfeited any contention relating to the interpreter's services during other witnesses' testimony by failing to object below. (See *Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 356, fn. 5 (*Dumas*) [failure to object below forfeits issue on appeal].)

### B. The Statute of Limitations

Offering no legal framework or standard, appellant asserts respondents' claims were barred by the one-year statute of limitations. She has forfeited any claim in this regard by failing to present a reasoned argument. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*) [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"].)

Moreover, to the extent appellant seeks to challenge the jury's finding that she had not made the defamatory statement about Dow before January 13, 2015 (one year before respondents filed this action), her claim lacks merit. "[W]e review a jury's factual findings for substantial evidence." (*Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 251.) Because "a defendant must prove the facts necessary to enjoy the benefit of a statute of limitations" (*Samuels v. Mix* (1999) 22 Cal.4th 1, 10),

9

appellant must show the evidence "'compels a finding in [her] favor . . . as a matter of law.'" (*In re R.V.* (2015) 61 Cal.4th 181, 218.)

Rather than compel a finding in appellant's favor, the evidence amply supports the jury's finding that appellant did not make her defamatory statements before January 13, 2015. Ikhlas, Hayat, Ilham, and Mountaha testified that appellant began making the defamatory statements in 2015, and only after respondents filed their suit for reimbursement against her (on January 5, 2015). Their testimony further established that appellant had made the allegations against Dow on multiple occasions, adding to them over time. Consistent with the Akra sisters' testimony, Rosa testified he began hearing about appellant's claims against Dow in 2015. While appellant suggested she told Hayat about Dow's alleged misconduct in 2013, the jury was entitled to, and did, reject her testimony.

### C. The Litigation Privilege

Appellant contends respondents' claims were based on allegations in her February 2015 cross-complaint, and were thus barred by the litigation privilege (Civ. Code, § 47, subd. (b)).[7] Here, too, appellant presents no reasoned legal

---

[7]     The litigation privilege bars liability for "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some (*Fn. is continued on the next page.*)

argument and has thus forfeited any contention on the issue. (See *Falcone, supra*, 164 Cal.App.4th at 830.) She further forfeited the issue by failing to raise the litigation privilege as a defense at trial. (See *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 808 [defense not asserted at trial is forfeited].)

Moreover, to the extent appellant suggests there was insufficient evidence she made defamatory statements beyond the inclusion of allegations in her cross-complaint, she is mistaken. Respondents presented testimony that appellant had made the defamatory statements against Dow to members of the Akra family and to anyone who happened to be present where they would gather. Appellant herself suggested she made those statements to Hayat, and asked her to relay them to Ikhlas, before she even filed her cross-complaint (though the jury rejected her assertion she had done so in 2013). Regardless of the timing of her defamatory statements to unrelated parties outside the litigation, appellant's cross-complaint cannot shield her from liability. (See *Silberg, supra*, 50 Cal.3d at 219 ["republications to nonparticipants in the action are generally not privileged under [the litigation privilege], and are thus actionable unless privileged on some other basis"].)

---

connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).)

11

D. *Exclusion of Testimony that Dow was Once Found Nude in His Office*

  1. *Background*

In June 2015, Karie Hirons, a process server, signed a declaration describing her efforts serve appellant's cross-complaint on Dow at his offices. According to Hirons, she rang the doorbell at Dow's offices, but there was no answer. She then opened the unlocked door and called out several times, but no one came to the front. Hirons proceeded down the hallway, and noticing a lighted office, "started to enter" it. She then noticed Dow, sitting naked behind a desk. When Hirons asked who he was, Dow replied he was not appropriately dressed.

Before trial, respondents moved to exclude Hirons's testimony as unduly prejudicial under Evidence Code section 352. In opposition, appellant's counsel argued the testimony was relevant to show that Dow had been naked in appellant's presence in his Beirut apartment. Counsel further argued the testimony was relevant for impeachment purposes because according to counsel, Dow had denied the incident with Hirons at his deposition. The trial court concluded Hirons's testimony was unduly prejudicial. The court observed that while appellant alleged Dow knowingly chose to be naked in her presence, in the alleged incident with Hirons, "he was in his own office behind a desk, . . . and wasn't expecting anybody to go in . . . ." As to counsel's argument that the testimony was relevant for impeachment purposes, the court stated that Dow's denial of the incident

12

was itself inadmissible, and that counsel could not "set it up as impeachment to be admissible." The court thus granted respondents' motion to exclude Hirons's testimony.

   2. *Analysis*

   Appellant challenges the trial court's exclusion of Hirons's testimony as unduly prejudicial. Evidence Code section 352 grants courts discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will," among other things, "create substantial danger of undue prejudice." (*Ibid.*) We review a trial court's evidentiary rulings for abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) "Specifically, we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid.*) A miscarriage of justice results only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

   Appellant maintains the probative value of Hirons's testimony required its admission. Initially, she asserts the incident involving Hirons was sufficiently similar to, and thus probative of, appellant's allegations. We disagree. The trial court was well within its discretion in concluding that Dow's alleged nudity while sitting alone in his office was insufficiently probative of his alleged constant nudity in the

presence of others in his Beirut apartment. (See *People v. King* (2010) 183 Cal.App.4th 1281, 1303 [evidence of prior bad act was unduly prejudicial under Evid. Code, § 352 because it was too dissimilar to charged offense].)

Next, appellant contends the court should have allowed Hirons's testimony to impeach Dow's denial of the incident at deposition. But as the trial court suggested, Dow's denial of the incident had no independent relevance to any issue at trial, and was thus itself inadmissible. While any contradiction could theoretically bear on a witness's credibility, "the trial court has wide latitude under state law to exclude evidence offered for impeachment that is collateral and has no relevance to the action." (*People v. Contreras* (2013) 58 Cal.4th 123, 152; see also *People v. Lewis* (2001) 26 Cal.4th 334, 374-375 [Evid. Code, § 352 gives trial court broad power to prevent ""nitpicking"" over ""collateral credibility issues""].) Accordingly, the trial court did not abuse its discretion in excluding Hirons's testimony.

E. *Admission of Rosa's Testimony on Damages*

1. *Background*

Before trial, appellant filed motions in limine seeking exclusion of evidence of damages that was not produced in discovery. At the hearing on the motion, appellant's counsel sought to recalibrate the motions to seek exclusion of Rosa's testimony about the new project he had been working on with Dow, arguing this testimony was speculative. The trial

14

court declined to exclude Rosa's testimony without knowing what it would be. At trial, respondents presented Rosa's deposition testimony without objection.

2. *Analysis*

Appellant challenges the trial court's failure to exclude Rosa's testimony, arguing his testimony about the amount his company had been paying IPN in the years before 2015 was speculative. At the hearing before the trial court, however, appellant argued only that Rosa's testimony about the new project was speculative. She may not now shift the focus of her argument to a different aspect of Rosa's testimony. (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.) In any event, Rosa testified about a consistent range of amounts his company had paid IPN in the years before 2015, explained that he had stopped doing business with IPN because of appellant's allegations against Dow, and indicated he had intended to continue to work with IPN in the future. We see nothing speculative about his testimony.[8]

---

[8] Appellant also appears to challenge the sufficiency of Rosa's testimony to support the jury's damages award, noting it was not supported by documentary evidence. We are aware of no authority requiring documentary evidence in support of a damages award. (See Evid. Code, § 411 [direct evidence from one witness "is sufficient for proof of any fact"].)

F. *Failure to Exclude the Deposition Testimony of Witnesses Who Were Deposed in Appellant's Counsel's Absence*

### 1. *Background*

Before trial, appellant moved to exclude the deposition testimony of Rosa, Ikhlas, and Mountaha on the ground that respondents deposed them while her former counsel, Gerges, was suspended by the State Bar. At the hearing on the motion, IPN's counsel informed the court that appellant's former counsel had attended Ikhlas's deposition. As to Rosa and Mountaha, the trial court declined to exclude their deposition testimony. However, believing it was discourteous of respondents to depose them during Gerges's suspension, the court ruled that appellant would be permitted to depose those witnesses before trial. It appears appellant did not avail herself of this opportunity.

### 2. *Analysis*

Appellant argues the trial court should have excluded the deposition testimony of Rosa, Ikhlas, and Mountaha, because they were deposed during Gerges's suspension. She has forfeited any contention in this regard, however, by offering neither argument nor authority in support. (See *Falcone, supra*, 164 Cal.App.4th at 830.) Moreover, we observe that appellant does not dispute respondents' assertion that Gerges actually attended Ikhlas's deposition, and respondents did not introduce the deposition of Mountaha, who testified at trial. Finally, the trial court

permitted appellant to depose both Rosa and Mountaha before trial, yet appellant apparently chose not to do so. We discern no error by the trial court.

G. *References to Appellant's Former Muslim Religion*

1. *Background*

At the beginning of trial, the court advised the jurors they were "not allowed to make judgment on the case based on anybody's religious association, race, ethnicity, [or] origin." During trial, respondents elicited testimony from multiple witnesses about appellant's former affiliation with a sect of Shia Islam. Respondents generally sought to show appellant would not have felt helpless in the area of Dow's apartment in Beirut, a Shiite neighborhood, especially given that Dow was a Christian.

On two occasions, appellant's counsel objected to questions about her religion on relevance grounds, and the trial court sustained the objections. Other testimony about appellant's religion was elicited without objection.

2. *Analysis*

Appellant argues the trial court erred in allowing the testimony about her former religion. She suggests the testimony contravened a ruling by the court prohibiting reference to any person's religion.

Preliminarily, appellant offers no meaningful analysis or citation to authority in support of her contentions. She has therefore forfeited the issue on appeal. (See *Falcone*,

17

*supra*, 164 Cal.App.4th at 830.) Moreover, the trial court sustained appellant's counsel's only objections to testimony about her former religion. By failing to object to other references, appellant again forfeited her contentions. (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.) Finally, contrary to appellant's suggestion, the trial court did not prohibit all references to a person's religion at the outset of trial. Instead, it properly advised the jury it was not to make any biased judgment based on protected categories, including religion.

### H. *Exclusion of Shigute's Testimony That Dow Had Sexually Harassed Her*

#### 1. *Background*

Shigute, Dow's former maid, testified at her deposition that Dow had sexually harassed both appellant and her in similar ways. She also stated that Dow had been constantly nude and had provided insufficient food. On IPN's motion in limine, the trial court excluded Shigute's testimony that Dow had sexually harassed *her*, but allowed appellant to introduce the rest of Shigute's testimony, including that Dow had sexually harassed appellant. The court reasoned that Dow's alleged conduct toward Shigute was not a defense to respondents' defamation claims, which concerned Dow's alleged conduct toward appellant.

18

## 2. *Analysis*

Appellant claims the trial court abused its discretion in excluding a portion of Shigute's deposition testimony. We need not decide whether the court erred in partially excluding Shigute's testimony, however, as any error could not have prejudiced appellant. The jury heard, and disbelieved, Shigute's testimony that Dow sexually harassed appellant, remained unclothed at all times, and provided insufficient food. Appellant offers no explanation how the addition of Shigute's testimony that Dow had also harassed Shigute herself might have made her claims more credible in the jury's eyes. Accordingly, we find no reversible error in the partial exclusion of Shigute's deposition testimony. (See *Watson*, *supra*, 46 Cal.2d at 836.)

## I. *Admission of Depositions Taken Abroad*

### 1. *Background*

Prior to trial, appellant moved to exclude the deposition testimony of three witnesses respondents had deposed abroad: Rahel, Shreim, and Olbi. Appellant's counsel objected that respondents had not obtained commissions for the depositions under Code of Civil Procedure section 2027.010, subdivision (e).[9] After the trial

---

[9] Commissions or "letters rogatory" "are basically letters of *request* to the foreign government, asking it to appoint a deposition officer and to order the witness to appear and testify before such officer." (Weil et al., Cal. Prac. Guide: Civil

*(Fn. is continued on the next page.)*

court informed counsel that commissions were not mandatory, counsel replied, "All right, then. That was the basis of my opposition." The court then denied appellant's motion, stating, "[I]f that's the only ground, then it will be denied on that ground."

## 2. *Analysis*

Appellant challenges the admission of the depositions taken abroad, complaining respondents (1) failed to obtain necessary commissions; (2) did not allow her counsel to attend; (3) did not comply with applicable foreign law; and (4) failed to elicit identifying and other information from the deponents.

As the trial court told appellant's counsel, the Code of Civil Procedure does not require commissions to conduct depositions in foreign countries; rather, it permits the court to issue a commission on a party's motion, "if it determines that one is necessary or convenient." (Code Civ. Proc., § 2027.010, subd. (e).) Appellant did not raise her remaining objections in the trial court, and the parties therefore did not litigate them below. Thus, appellant forfeited those

---

Procedure Before Trial (The Rutter Group 2020) ¶ 8:647.) Under Code of Civil Procedure section 2027.010, subdivision (e), "[o]n motion of the party seeking to take an oral deposition in a foreign nation, the court in which the action is pending shall issue a commission, letters rogatory, or a letter of request, if it determines that one is necessary or convenient."

20

contentions.  (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.)

J. *Denial of Appellant's Motion in Limine to Exclude Ikhlas's Testimony Based on the Physician-Patient Privilege*

1. *Background*

Ikhlas was a psychiatrist.  Before trial, appellant moved to exclude Ikhlas's testimony based on the physician-patient privilege, claiming Ikhlas had been appellant's husband's doctor and suggesting she was expected to testify about matters she had learned through privileged communications with him.  The trial court denied the motion based on IPN's counsel's representation that Ikhlas would be testifying about appellant's statements, not those of her husband.

At trial, Ikhlas testified that appellant's husband, Ajib, was her good friend.  She stated, without objection, that though she had written him three prescriptions over the years when his doctor was unavailable, she was not his doctor.  Later, in testifying about appellant's interactions with Dow, Ikhlas also mentioned communications she had exchanged with Ajib, again without objection.  For instance, she testified that Ajib had asked her to tell Dow not to send appellant a 1099 tax form.

On cross-examination, in seeking to establish that Ikhlas was Ajib's doctor, rather than a close friend, appellant's counsel asked for details about the prescriptions

21

she had written Ajib. Ikhlas initially answered, but later sought guidance from the court whether she should be providing this information about Ajib. In response, appellant's counsel called Ajib into the courtroom, and Ajib confirmed he was willing to allow Ikhlas to testify about his medical information.

2. *Analysis*

Appellant claims the trial court should have excluded Ikhlas's testimony, asserting it was all based on privileged communications with Ajib. Initially, appellant has not preserved this claim for appeal. The trial court correctly denied appellant's motion in limine to exclude Ikhlas's testimony based on the representation of IPN's counsel that she would testify only about appellant's statements. At trial, appellant raised no privilege objection to Ikhlas's testimony. The only privilege-related concern was raised by Ikhlas herself, and the response of appellant's counsel was to seek and obtain Ajib's waiver. Accordingly, appellant forfeited her challenge to Ikhlas's testimony. (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.)

Moreover, Ikhlas testified extensively about appellant's own statements to her regarding appellant's trip to Beirut and her interactions with Dow. Nothing in the record suggests Ikhlas derived any of her testimony on this subject from privileged communications with Ajib. As to Ikhlas's testimony that she had written Ajib prescriptions in the past, appellant offers no meaningful argument that it was

22

prejudicial and has therefore forfeited any contention in this regard. (See *People v. Reardon* (2018) 26 Cal.App.5th 727, 740 (*Reardon*) ["It is an appellant's duty to spell out in the briefing exactly how a claimed error caused prejudice; put another way, we do not presume prejudice"].)

K. *The Alleged Submission of a Forged Document*

1. *Background*

At trial, Dow submitted Exhibit No. 362. This document contained three paragraphs. The first two stated that IPN had paid appellant's expenses on her business trip and advanced her 2,000 euros for a personal trip to Paris. Following those paragraphs was Dow's signature. The final paragraph of this exhibit stated, "I have received the original of this document and agree to its contents," and was followed by appellant's name and signature. The parties stipulated this signature belonged to appellant, but she claimed she had not placed it there. Respondents called an expert witness, who opined appellant's signature was handwritten.

On cross-examination, appellant's counsel showed the expert another document, Exhibit No. 287-001, which was similar to Exhibit No. 362 but omitted the last paragraph and appellant's name and signature. When shown this document, the expert opined that Exhibit No. 287-001 was an original, and that Exhibit No. 362 contained a copy of that document, but that the last paragraph on the latter was handwritten, as was appellant's signature.

2. *Analysis*

Appellant now claims Exhibit No. 362 was a forgery. She offers no explanation of the legal significance of this assertion, and makes no effort to establish reversible error. She has therefore forfeited any contention in this regard. (See *Falcone, supra,* 164 Cal.App.4th at 830; *Reardon, supra,* 26 Cal.App.5th at 740.) Moreover, we observe that the record establishes no forgery; rather, it suggests that Dow first signed a statement about IPN's payments to appellant, photocopied that document, added the final paragraph, and presented that document to appellant for signature.

L. *Admission of Testimony about Appellant's Communications with Her Former Counsel*

Appellant claims the trial court erred in admitting testimony about her statements concerning her communications with her former counsel, Gerges. She claims this testimony violated the attorney-client privilege. This contention is frivolous. By revealing to others the content of her communications with former counsel, appellant waived the attorney-client privilege. (See *Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1496 [client waives privilege by disclosing communications with counsel to unrelated parties].)

24

M. *Admission of Testimony about the Suspension of Appellant's Former Counsel*

1. *Background*

The State Bar suspended appellant's former counsel, Gerges, while discovery was ongoing in this action. Prior to trial, the trial court and the parties discussed Gerges's suspension, and the court instructed respondents not to bring up the issue during trial. Nevertheless, Dow mentioned the suspension during his testimony, without objection or motion to strike.

2. *Analysis*

Appellant argues the court erred in allowing Dow's testimony about Gerges's suspension. However, she forfeited her challenge to the admission of the testimony by failing to object to it at trial. (See *Dumas, supra*, 45 Cal.App.5th at 356, fn. 5.) Appellant has also forfeited her contentions by failing to explain how the claimed error prejudiced her. (See *Reardon, supra*, 26 Cal.App.5th at 740.)

N. *Dow's Opening Statement*

1. *Background*

In his opening statement, Dow told the jury the evidence would show that when he issued appellant a 1099 tax form, she was upset because she did not want to pay taxes and was afraid of losing her eligibility for Medi-Cal. He further stated that the jury would see an email he

25

received from appellant's husband, Ajib, saying, "Thank you for everything you have done for my wife."

At trial, Ilham testified that appellant and Ajib were afraid they would lose eligibility for Medi-Cal because of the 1099 form Dow had issued, and that Ajib thought they should not be required to pay taxes on income appellant had earned abroad. During his cross-examination of Ajib, Dow introduced an email Ajib had sent him after appellant returned from Paris, stating, "Thank you for everything."

2. *Analysis*

Appellant claims Dow's opening statement misrepresented the evidence. She asserts there was no evidence that she was concerned about losing Medi-Cal or intended to avoid paying taxes. She also notes that Ajib's email did not state, "Thank you for everything *you have done for my wife*," as Dow claimed.

Initially, we observe that appellant forfeited any contention regarding Dow's opening statement by failing to object to it below. (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.) Moreover, appellant presents no legal argument in support of her challenge, and has forfeited her contentions for that reason as well. (See *Falcone, supra*, 164 Cal.App.4th at 830.) Finally, were we to overlook appellant's double forfeiture of the issue, we would conclude Dow's opening statement fairly characterized the anticipated evidence. Consistent with Dow's statement about appellant's response to the 1099 form, Ilham testified that appellant was

26

concerned about losing Medi-Cal eligibility, and that Ajib -- and by reasonable inference, appellant as well -- did not think they should pay taxes on her income from IPN. Additionally, consistent with Dow's statement about Ajib's email, upon appellant's return from Paris, Ajib sent him an email thanking him for everything he had done. It is hardly a stretch to conclude Ajib was thanking Dow for what Dow had done *for appellant*.

O. *The Empaneling of Juror No. 12*

    1. *Background*

During jury selection, after all parties accepted the panel, Juror No. 12 addressed the court, stating she had limited understanding of English. In response to the trial court's questioning, she reported she had been in the United States for 38 years and had attended the first level of an English language class in adult school. She further reported she worked at a university cafeteria, and spoke English with students, though most of her communications were with kitchen workers, who spoke Spanish. She confirmed that she was able to understand the court during their colloquy. The trial court told the juror the trial was not going to involve technical terms, and instructed her to raise her hand if she had trouble understanding anything during trial. The court proceeded to seat Juror No. 12, without objection.

### 2. *Analysis*

Appellant now seeks to challenge the empaneling of Juror No. 12, asserting conclusorily that "[i]n light of her inability to understand the proceedings, she should not have been allowed to serve as a juror." Appellant's failure to develop a meaningful argument forfeits her claim on appeal. (See *Falcone, supra,* 164 Cal.App.4th at 830.) Appellant further forfeited any challenge to the seating of Juror No. 12 by failing to object below. (See *People v. Moreno* (2011) 192 Cal.App.4th 692, 706 [party may not challenge juror's qualifications for first time on appeal].)

### P. *Dow's Ownership of IPN*

### 1. *Background*

Dow testified at trial that he had been IPN's chief executive officer, chief financial officer, and secretary, beginning shortly after the company's formation. When asked on cross examination, if he was aware of any document in the trial exhibits attesting to his ownership of IPN, Dow responded that IPN was "not General Motors" and was not required to disclose its ownership in official filings.

### 2. *Analysis*

Appellant now asserts that Dow did not own IPN. In her opening brief, she makes no attempt to explain the legal significance of this assertion. She has therefore forfeited any contention in this regard. (See *Falcone, supra,* 164

Cal.App.4th at 830.) In her reply brief, appellant appears to suggest that IPN did not authorize this action against her. She has forfeited any such claim, however, by failing to raise it in her opening brief (see *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 (*Browne*) [failure to raise argument in opening brief constitutes forfeiture]), and by failing to raise it below (see *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5).

### Q. *Admission of Hayat's Video Deposition*

Appellant contends the trial court erred in allowing respondents to present Hayat's videotaped deposition in lieu of live testimony because there had been no showing she was unavailable to testify at trial. Once again, appellant forfeited this issue by failing to object on this ground below.[10] (See *Dumas*, *supra*, 45 Cal.App.5th at 356, fn. 5.)

### R. *Allowing Dow's Wife to be Present During Witness Testimony*

According to the parties, Dow's wife, May, was allowed to observe the testimony of one witness (Mountaha) before testifying herself. Appellant now claims, without meaningful analysis or citation to authority, that this was

---

[10] Forfeiture aside, to the extent appellant complains her counsel was unable to cross-examine Hayat at trial, we observe that counsel cross-examined Hayat at the deposition, and the cross-examination testimony was presented to the jury.

prejudicial error. She has forfeited her claim by failing to develop any argument. (See *Falcone, supra,* 164 Cal.App.4th at 830.) Moreover, the record reveals no objection by appellant to May's presence below, a prerequisite to preserving her challenge for appeal. (See *Dumas, supra,* 45 Cal.App.5th at 356, fn. 5.)

### S. *Sufficiency of the Evidence to Show Appellant's Allegations Were False*

In her reply brief, appellant asserts the evidence was insufficient to support the jury's findings that her allegations against Dow were false. She has forfeited this contention by failing to raise it in her opening brief. (See *Browne, supra,* 213 Cal.App.4th at 726.)

Moreover, there was ample evidence to support the jury's verdict. The testimony of appellant and Shigute about Dow's conduct toward appellant conflicted with the testimony of multiple witnesses who had been with appellant and Dow in Beirut. Multiple other witnesses -- all former friends of appellant -- testified about appellant's own statements, which contradicted her allegations and suggested she and her former attorney contrived them as leverage in litigation against Dow. The jury rejected appellant's version, as it was entitled to do.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

31